**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | Case No.: 1:19-cv-14765-NLH-JS (State Court Docket No. L-000388-19) |
| *Plaintiffs,* | Civil Action |
| v. | |
| E.I. DUPONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT SPECIALTY PRODUCTS USA, LLC; THE 3M COMPANY; and "ABC CORPORATIONS" 1-10 (Names Fictitious), | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
THIS ACTION TO THE SUPERIOR COURT OF NEW JERSEY**

**COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP**
Leonard Z. Kaufmann
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
Fax: (201) 845-9423
E-Mail: lzk@njlawfirm.com
*Special Counsel to the Attorney General*

**Gurbir S. Grewal
ATTORNEY GENERAL OF NEW JERSEY**
Richard J. Hughes Justice Complex
25 Market Street; PO Box 093
Trenton, NJ 08625-0093
Tel.: (609) 376-2761
By: Gwen Farley, Deputy Attorney General
   Gwen.Farley@law.njoag.gov
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 5

BACKGROUND ...................................................................................................... 8

LEGAL STANDARD.............................................................................................. 11

ARGUMENT ........................................................................................................... 12

I.      DUPONT HAS NOT RAISED A COLORABLE FEDERAL DEFENSE TO THE
        STATE'S ENVIRONMENTAL CONTAMINATION CLAIMS...................................... 13

        A.    Boyle Does Not Apply in This Case Because There Is No Conflict Between A Federal
              Interest and State Law. ................................................................................ 14

        B.    The Boyle Products Liability Defense Does Not Apply to the State's Environmental
              Contamination Claims. ............................................................................... 18

        C.    Even if Boyle Could Apply, DuPont Has Failed to Allege Facts Supporting Its
              Applicability Here. ....................................................................................... 21

II.     THE STATE'S CLAIMS ARE NOT "FOR OR RELATING TO" AN ACT UNDER
        COLOR OF FEDERAL OFFICE. ............................................................................. 23

CONCLUSION........................................................................................................ 30

# TABLE OF AUTHORITIES

Page(s)

<u>Supreme Court Cases</u>

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) ..............................................................................................Passim
*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ................................................................................................... 10
*Miree v. DeKalb County*,
   433 U.S. 25 (1977) ..................................................................................................... 12
*Watson v. Philip Morris Companies, Inc.*,
   551 U.S. 142 (2007) ........................................................................................ 7, 23, 24

<u>Circuit Court Cases</u>

*Cessna v. Rea Energy Coop., Inc.*,
   753 F. App'x 124 (3d Cir. 2018)................................................................................ 7
*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871 (9th Cir. 2014).................................................................................... 13
*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of*
   *Philadelphia*,
   790 F.3d 457 (3d Cir. 2015)...............................................................................Passim
*In re Nat. Football League Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014).................................................................................... 17
*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014).................................................................................. 7
*Lincoln Ben. Life Co. v. AEI Life, LLC*,
   800 F.3d 99 (3d Cir. 2015)........................................................................................ 2
*Papp v. ForeKast Sales Co.*,
   842 F.3d 805 (3d Cir. 2016)...............................................................................Passim
*Ripley v. Foster Wheeler LLC*,
   841 F.3d 207 (4th Cir. 2016)................................................................................... 9
*Wisconsin v. Schaffer*,
   565 F.2d 961 (7th Cir. 1977)................................................................................... 24
*Zeringue v. Crane Co.*,
   846 F.3d 785 (5th Cir. 2015)................................................................................... 23

<u>District Court Cases</u>

*Anderson v. Hackett*,
646 F. Supp. 2d 1041 (S.D. Ill. 2009) ................................................................ 13, 15
*Aegis Defense Services, LLC v. Chenega-Patriot Group, LLC*,
141 F. Supp. 3d 479 (E.D. Va. 2015)....................................................................... 15
*Arness v. Boeing North Am.*,
997 F. Supp. 1268 (C.D. Cal. 1998)................................................................... 18, 19
*Atiqi v. Acclaim Tech. Servs., Inc.*,

2016 WL 2621946, (C.D. Cal. Feb. 11, 2016) ........................................................ 13

*Bahrs v. Hughes Aircraft Co.*,
795 F. Supp. 965 (D. Ariz. 1992) ........................................................................ 19

*Brinkman v. John Crane, Inc.*,
2015 WL 13427697 (E.D. Va. June 11, 2015) ...................................................... 9

*Brown v. Cerro Flow Prods., Inc.*,
2010 WL 55905 (S.D. Ill. Jan. 4, 2010) ............................................................... 19

*Carter v. Monsanto Co.*,
635 F. Supp. 2d 479 (S.D.W.Va. 2009) ............................................................... 19

*Custer v. Cerro Flow Prods. Inc.*,
2009 WL 5033931 (S.D. Ill. Dec. 15, 2009) ....................................................... 19

*Dorse v. Armstrong World Indus., Inc.*,
716 F. Supp. 589 (S.D. Fla. 1989) ....................................................................... 13

*Faulk v. Owens-Corning Fiberglass Corp.*,
48 F. Supp. 2d 653 (E.D. Tex. 1999) ................................................................... 18

*Guggenberger v. Starkey Labs., Inc.*,
2016 WL 7479542 (D. Minn. Dec. 29, 2016) ...................................................... 24

*Hagen v. Benjamin Foster Co.*,
739 F. Supp. 2d 770 (E.D. Pa. 2010) .................................................................... 9

*Mason v. KBR, Inc.*,
2012 WL 12517199 (D. Md. Jan. 12, 2012) ........................................................ 20

*New Jersey Dep't of Envtl. Prot. v. Dixo Co., Inc.*,
2006 WL 2716092 (D.N.J. Sept. 22, 2006) .......................................................... 19

*New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*,
381 F. Supp. 2d 398 (D.N.J. 2005) ................................................................. 16, 17

*New Jersey Dep't of Envtl. Prot. v. Viacom, Inc.*, No.,
2006 WL 3534364 (D.N.J. Dec. 7, 2006) ....................................................... 19, 20

*O'Connor v. Boeing N. Am., Inc.*, No. CV 00-0186 (DT),
2005 WL 6035255 (C.D. Cal. Aug. 18, 2005) ..................................................... 13

*Robson v. Monsanto Co.*,
2010 WL 11565114 (S.D. W.Va. Sept. 29, 2010) ............................................... 19

*Ward v. Lockheed Martin Corp.*,
2006 WL 889729 (M.D. Fla. Mar. 31, 2006) ....................................................... 19

## New Jersey State Case

*Bass v. Air Prod. & Chemicals, Inc.*, No. A-,
2006 WL 1419375 (N.J. Super. Ct. App. Div. May 25, 2006) .............................. 14

## Statutes

28 U.S.C. § 1442(a)(1) ..................................................................................... Passim
N.J. Stat. Ann. § 58:10-23.11g ............................................................................. 15
Pub. L. 112-51, § 2(a), (b) (2011) ........................................................................ 20

Other Authorities

H.R. Rep. No. 112–17 .................................................................................................................. 24

## INTRODUCTION

For over 125 years, defendant E.I. DuPont Nemours & Company ("DuPont") discharged a diverse and significant amount of hazardous substances and pollutants into New Jersey's natural resources at its Repauno manufacturing site.  *See* Plaintiffs' Amended Complaint, ECF No. 1.1.  To ensure the citizens of New Jersey do not bear the costs of remediating that environmental contamination and are made whole, the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund (collectively "the State") brought several claims under New Jersey's common law and environmental statutes against DuPont and its co-Defendants.

DuPont asserts that this state-law case must be heard in federal court because, although it is not a federal officer, it contracted with the federal government for the manufacture of certain products at this site for a total of six years, *at most*, during World War I and World War II.[1]

DuPont's sole ground for asserting this Court has jurisdiction is the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  As the only defendant seeking removal, DuPont bears the burden of establishing subject matter jurisdiction.  To do so, it must show, among other things, that it has a colorable federal defense to the environmental contamination state law claims the State brings against it, and that the State's claims are "for or relating to" any act under color

---

[1] DuPont operated Repauno from 1880–2007.  DuPont alleges that it manufactured products pursuant to government contracts at Repauno "[o]n September 18, 1918," and entered into contracts on three different dates in 1942.  Ex. A ¶¶ 13–21.  Even assuming DuPont manufactured at Repauno pursuant to government contracts in all of 1918 and 1919, and 1942–45 (thus assuming production continued until, or shortly after, the conclusions of World War I and II), that would comprise 6 years of the Repauno site's 127-year manufacturing history, or 4.7% of the time during which the contamination at issue in this lawsuit occurred.

of federal office.  DuPont fails to meet either requirement.  The Court should thus remand this case to the Superior Court of New Jersey.[2]

Regarding the first requirement, the purported federal defense DuPont asserts in its Notice of Removal, ECF No. 1 (attached as Ex. A), is the "military contractor defense" articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  But by *Boyle*'s plain language, and subsequent rulings interpreting that decision, that defense cannot be colorably asserted here.  *First*, *Boyle* itself held that state law is only preempted by federal procurement policy where there is a *direct conflict* between that policy and the operation of state law.  DuPont cannot legitimately claim that any such conflict exists, because the federal government's procurement of goods for the military from DuPont in no way conflicts with DuPont's obligation, under New Jersey law, not to discharge hazardous substances and pollutants into the State's natural resources.  *Second*, *Boyle* is a products liability defense, yet the State asserts no products liability claims against DuPont.  The unlawful acts alleged in the complaint relate not to the characteristics or quality of the products DuPont manufactured but rather the manner in which it discharged hazardous substances and pollutants, rendering *Boyle* legally irrelevant.  *Third*, even if *Boyle* could apply here, DuPont would need to both allege and provide factual material demonstrating that the facts it alleges supporting removal, if proven at trial, would satisfy that defense's elements—namely, that the government provided reasonably precise specifications as to how DuPont should dispose of hazardous substances and pollutants, that DuPont conformed with those requirements, and that DuPont warned the government of dangers

---

[2] While the State has not moved to remand the case related to Defendants' conduct at the site known as Chambers Works, Dkt. No. 1:19-cv-14766-RMB-JS or the case related to Defendants' conduct at the site known as Pompton Lakes, Dkt. No. 2:19-cv-14758-JMV-SCM, it reserves the right to so move.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 n.9 (3d Cir. 2015) (explaining that "challenges to subject-matter jurisdiction may be raised at any time.").

known to it but not the government.  *See Papp v. ForeKast Sales Co.*, 842 F.3d 805, 814 (3d Cir. 2016) (citing *Boyle*, 487 U.S. at 512).  But neither the facts averred in the Notice of Removal nor the documents DuPont subsequently provided to support removal come close to establishing these elements.  DuPont's purported *Boyle* defense is legally irrelevant and factually unsupported, and it cannot create federal jurisdiction over this case.

As to the second requirement for removal, DuPont has failed to show that the State's claims are "for or relating to any act under color of [federal] office."  28 U.S.C. § 1442(a)(1). DuPont appears to assert that it discharged hazardous substances and pollutants into New Jersey's waters "under color of [federal] office" because doing so was "inherent" to fulfilling a federal manufacturing contract.  Yet these independent acts no more create federal jurisdiction than if DuPont had refused to pay the workers fulfilling those contracts a state-mandated minimum wage.  In both instances, the conduct at issue was not taken under color of federal law, because nothing in the relevant federal contract related to these unlawful acts.  To accept DuPont's argument would provide for removal jurisdiction over all environmental contamination cases pertaining to a manufacturing facility that, at some point in its history, has made any products pursuant to federal contracts.  This is contrary to the purpose of the federal removal statutes.  Because DuPont has not shown that the federal government directed it to engage in the conduct at issue in this litigation, the federal officer removal statute's causation requirement is not met here.

For both these reasons, either of which is sufficient to require remand, DuPont has failed to meet its burden of establishing subject matter jurisdiction.  The Court should thus grant the State's motion to remand.

## BACKGROUND

On March 27, 2019, the State filed this suit in the Superior Court of New Jersey, which arises from environmental contamination at the manufacturing site known Repauno.  The State subsequently filed its First Amended Complaint on May 31, 2019.  DuPont was served with the First Amended Complaint on June 10, 2019.  All of the State's claims arise under state law, and there is no diversity of citizenship between the parties.

DuPont removed this litigation to the District of New Jersey on July 5, 2019.  The sole basis for removal asserted is the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  *See, e.g.*, Ex. A, ¶ 1.

DuPont alleges in its Notice of Removal that "[t]hroughout the World War I and World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Repauno [], and to be used by the United States and its Allies to support the war effort."  Ex. A at ¶¶ 11–12.  DuPont further alleges that "[t]hese government contracts, as described below, compelled DuPont to vastly increase the volume of chemical compounds manufactured at Repauno."  *Id.*  DuPont also alleges that "[t]he manufacture of these products necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes.  Plaintiffs now claim that DuPont and the other Defendants must remediate these discharges, and pay natural resource damages stemming from these emissions."  *Id.* ¶ 12.

DuPont cites to the following contracts in its Notice of Removal relating to the Repauno site: (1) September 18, 1918 Procurement Order No. P15109-1425E for the production of 82,500 pounds of diphenylamine; (2) January 30, 1942 Contract W-670-ORD-177 for the production of 360,000 pounds of diphenylamine; (3) March 30, 1942 supply contract No. W-670-ORD-248,

for the manufacture of 251,600 pounds of Pentolite, Dry (50-50); and (4) May 6, 1942 supply contract No. W-670-ORD-2271 for the manufacture of an additional 224,000 pounds of diphenylamine. *Id.* ¶¶ 13–21.

DuPont alleges that it "was acting under the U.S. government when it performed pursuant to the government contracts" referenced above and that these contracts "dictate[d] the government specifications that DuPont was required to follow in manufacturing each chemical compound." *Id.* ¶¶ 30–31. DuPont further asserts that the manufacturing of products that the U.S. government ordered is "related" to and "makes up a significant portion of Plaintiffs' alleged harm" at the Repauno site, which has operated since 1880. *Id.* ¶¶ 35–37. Finally, DuPont alleges that it is immune from the State's claims based on the government contractor defense under *Boyle*. *Id.* ¶ 39.

On July 25, 2019, the State requested by letter that DuPont provide "all evidentiary support for your [] assertions . . . . that the District Court has subject matter jurisdiction over these matters." Although DuPont responded with certain objections on July 31, 2019, it provided "documents it relied upon in determining that removal of the four cases was appropriate and authorized by 28 U.S.C. § 1442(a)(1)." *See* July 31, 2019 McAleese letter to Kaufmann (attached as Ex. B). The documents related to this case are attached as Exhibit C.

Generally speaking, these documents[3] provide:

- The September 18, 1918 Procurement Order No. P15109-1425E sets forth the amount and characteristics of the substance to be delivered. It also contains

_____

[3] The September 18, 1918 Procurement Order No. P15109-1425E is the document produced and identified by DuPont as EID-REP-00001 to -0000110. The January 30, 1942 Contract W-670-ORD-177 is EID-REP-0000111 to -000138. The March 30, 1942 supply contract No. W-670-ORD-248 is EID-REP-0000161 to -000212. The May 6, 1942 supply contract No. W-670-ORD-2271 is EID-REP-0000139 to -000160.

documents related to payments to be made upon termination of the contract. The Order does not contain any provisions relating to the manufacturing process DuPont should use to achieve the desired specification, let alone any mention of the method DuPont should use to store, discharge or dispose of hazardous substances. Indeed, one of the included documents states: "This section [of the government] knows of no special conditions or circumstances to be considered other than as specified in the contract." EID-REP-00009. Further, the contract states that "all work required in carrying out this contract shall be performed in full compliance with the laws of the State … where such labor is performed …." EID-REP-00097.

- Each of the three WWII contracts deals with the amount of the chemical purchased, and the method DuPont was to use for delivery. They only provide for inspection of the final product by the United States, and there are no provisions for inspection of DuPont's manufacturing or discharge process by any federal official.

Neither the Notice of Removal nor the additional documents provide any evidence explaining how or why discharges of hazardous substances were "inherently associated" with the company's manufacturing process. Nor has DuPont provided any evidence that its discharge practices while manufacturing products for these government contracts were in any way different from those it employed for the rest (*i.e.*, the other ~95%) of the time period at issue in this litigation when it discharged a diverse and significant amount of hazardous substances and pollutants into New Jersey's environment.

**LEGAL STANDARD**

DuPont, as the removing party, bears the burden of establishing the basis for federal officer removal jurisdiction. *Cessna v. Rea Energy Coop., Inc.*, 753 F. App'x 124, 1127 (3d Cir. 2018). The federal officer removal statute permits removal of any state court action against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Although the federal officer removal statute should be "liberally construed," the Supreme Court has held that the "broad language is not limitless . . . [a]nd a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) (internal quotations omitted). To remove a case pursuant to the federal officer removal statute, a defendant bears the burden of proving *each* of the four prongs of the federal officer removal test:

> (1) it is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to[,]" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015), *as amended* (June 16, 2015) ("*Def. Ass'n*") (quoting 28 U.S.C. § 1442(a)(1)). The removing party "may not offer mere legal conclusions," but "must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (cited with approval in *Papp v. ForeKast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016)). Only the third and fourth prongs are at issue in this case, both of which DuPont must satisfy to prove subject matter jurisdiction.

Where, as here, a plaintiff argues that the facts alleged in the notice of removal fail to satisfy the four prongs of the federal officer removal test, as a legal matter, the motion to remand is considered to be a "facial attack" on subject matter jurisdiction, under which the Court assumes the truth of the notice of removal's factual allegations. *Papp*, 842 F.3d at 811. And here, even if true, DuPont's facts are nonetheless insufficient.

## ARGUMENT

This case should be remanded because DuPont fails to satisfy two of the four elements of federal officer removal jurisdiction: (i) that the company raises a "colorable federal defense," and (ii) that the State's claims are "for or relating to an act under color of federal office." *Def. Ass'n*, 790 F.3d at 467. The acts DuPont claims it took at the government's direction, and therefore the putative basis of its federal defense, were the manufacture of certain products for the federal government for military use for six years, *at most*, during WWI and WWII. This is the sole basis for DuPont's removal. DuPont does not claim that anything in its production contracts with the federal government specified, directed, or controlled its discharge of hazardous substances. And DuPont provides no evidence for its conclusory statement that the manufacture *necessarily* resulted in or required the disposal practices and harmful and improper discharges to the air and water that contaminated New Jersey's natural resources and are the reason for this litigation. Nor is there any evidence that DuPont's harmful and improper method of disposal was any different from the work it did for the government than for the other ~95% of the time that is relevant to this litigation.

The State's claims against DuPont relate not to these products' manufacture or design but rather to DuPont's discharge of hazardous substances and pollutants into New Jersey's natural resources. Nothing in the facts DuPont alleges suggests the government controlled, ordered, or

indeed said anything about how DuPont should have handled—say nothing of discharged—those substances and pollutants.  In short, this case is *not* about any actions DuPont took at the federal government's direction, and thus the only asserted basis of subject matter jurisdiction is invalid. This Court should grant the State's motion to remand.

## I.  DUPONT HAS NOT RAISED A COLORABLE FEDERAL DEFENSE TO THE STATE'S ENVIRONMENTAL CONTAMINATION CLAIMS.

While "[a] defendant need not win his case before he can have it removed," DuPont must show that its asserted defense is "colorable."  Under the relevant Third Circuit precedent, "[a] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."  *Papp*, 842 F.3d at 815 (quoting *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782–83 (E.D. Pa. 2010)).  In *Papp*, for instance, the Third Circuit first considered whether the asserted defense could apply to the claims before it (a legal question of first impression), and then evaluated whether the facts alleged to support removal would, if proven, satisfy that defense's requirements.  *Id.*[4]  The mere assertion of a federal defense is thus not enough, standing alone, to create federal officer removal jurisdiction—the defendant must show that the defense is "'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (quoting *Colorable Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

In this case, DuPont claims that *Boyle* provides it with a colorable federal defense. However, the *Papp* analysis demonstrates that DuPont's *Boyle* defense is not colorable for three

---

[4] Other courts have followed this same approach.  *See, e.g.*, *Ripley v. Foster Wheeler LLC*, 841 F.3d 207 (4th Cir. 2016) (finding federal officer jurisdiction to exist after concluding, as a matter of first impression, that asserted defense applies); *Brinkman v. John Crane, Inc.*, No. 4:14-CV-142, 2015 WL 13427697, at *6 (E.D. Va. June 11, 2015) (deciding, on motion to remand, that asserted defense was not colorable because it did not apply to category of claims at issue).

reasons. *First*, because the *Boyle* defense is a species of preemption, it only applies where there is "a 'significant conflict' . . . between an identifiable 'federal policy or interest and the operation of state law,'" *Boyle*, 487 U.S. at 507 (citation omitted)—and DuPont has not shown any such conflict here. *Second*, *Boyle*'s products liability defense does not apply here, because each of *Boyle*'s three substantive elements relate to the design and manufacture of a product—elements that are irrelevant to the environmental claims the State asserts. *Third*, even if *Boyle* were legally applicable to this case, DuPont has fallen woefully short of alleging or presenting the factual support necessary to show that it can satisfy *Boyle*'s substantive elements here. For these *independent* reasons, DuPont's purported *Boyle* defense is not colorable.

### A. *Boyle* Does Not Apply in This Case Because There Is No Conflict Between A Federal Interest and State Law.

*Boyle*'s military contractor defense is a sub-species of preemption. Where there is a substantial conflict between federal and state law that prevents an individual from complying with both, federal law "preempts" state law and compliance with federal law will immunize a defendant from state-law liability. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Thus, a threshold requirement for a preemption defense such as *Boyle* is that there be a "significant conflict" between state and federal law. *Boyle*, 487 U.S. at 512. Because DuPont has failed to identify any such conflict, its purported *Boyle* defense is legally inapplicable.

In *Boyle*, the plaintiff alleged that the defendant (a military contractor) had defectively designed an escape hatch on a helicopter it had manufactured for the Navy. *Id.* at 503. The plaintiff's son was a Marine who co-piloted one of those helicopters, and the complaint alleged that he had survived when the helicopter crashed but drowned because of a defectively designed escape hatch (*i.e.*, one that opened outward, instead of inward). *Id.* The defendant responded

that it had built the hatch that way because the federal government had required it to do so.

Thus, as the Court put it:

> Here the state-imposed duty of care that is the asserted basis of the contractor's liability (specifically, the duty to equip helicopters with the sort of escape-hatch mechanism petitioner claims was necessary) is precisely contrary to the duty imposed by the Government contract (the duty to manufacture and deliver helicopters with the sort of escape-hatch mechanism shown by the specifications).

*Id*. at 509.  Because of this direct conflict, the Court held that it was necessary to fashion the military contractor defense to ensure state tort law would not impugn federal procurement policy. *Id*. at 507.

But the *Boyle* Court was careful to note that, because preemption is the exception and not the rule, such displacement "will only occur where . . . a 'significant conflict' exists between an identifiable 'federal policy or interest and the operation of state law.'"  *Id.* (citation omitted).  A "significant conflict" exists only where, as in *Boyle*, the federal government specifically requires that a product be designed a certain way.  Where that is the case, the contractor who filled the government's order cannot be held liable under state law for an alleged defect with that design. *Id.* at 513.  And, as the *Papp* court recognized, the same conflict can exist in the failure-to-warn context.  If "the government exercised complete control" over which warnings would accompany a product, the contractor who built the product and supplied warnings in conformance with the government's instructions should not have to defend against subsequent claims that state law required more fulsome warnings.  842 F.3d at 814–15.

By contrast, where a military contractor *can* comply with both its federal directive and state law, state law is not preempted.  As the *Boyle* Court explained:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary.  The contractor could

comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

487 U.S. at 508.

The Court further explained that the preemption defense it had fashioned did not call into question earlier decisions holding that state law applies where no such direct conflict existed. For instance, *Boyle* discussed *Miree v. DeKalb County*, in which the Court held that state law governed the interpretation of a federal contract between an airport and the Federal Aviation Administration, because "any federal interest in the outcome of the [dispute] . . . is *far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern*." *Boyle*, 487 U.S. at 506–07 (quoting *Miree*, 433 U.S. 25, 27 (1977) (emphasis added)).

The *Boyle* Court's reliance on *Miree* underscores the point that the federal contractor defense is only to be applied where there is a clear, present conflict between state law and a federal interest. In other words, a "conflict there must be." *Id.* at 508.

Under *Boyle* and *Miree*, DuPont's assertion of a federal contractor defense is not colorable, because it has failed to identify *any* conflict between the application of New Jersey environmental law and federal procurement policy. Nor could it, because the federal contracts on which it bases its defense say nothing about how the company should handle or discharge the hazardous substances and pollutants at issue in this litigation. As in the *Boyle* Court's air conditioner example, DuPont has failed show that it was unable to "comply with both its contractual obligations and the state-prescribed duty of care." *Id.*

Courts regularly reject a *Boyle* defense where the defendant similarly fails to demonstrate the required federal-state conflict. For example, in *Anderson v. Hackett*, in which the defendant removed based on the federal officer statute, the court held that *Boyle* was not a colorable

16

defense to environmental contamination claims, in part because the defendants had "pointed to no federal interest that is implicated by requiring them to handle and dispose of their products with care."  646 F. Supp. 2d 1041, 1053 (S.D. Ill. 2009) (remanding to state court).  Similarly, the Ninth Circuit has found *Boyle* not even to be "relevant" where the defendant failed to demonstrate any such conflict.  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 881 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016).  Courts across the country have taken the same approach.  *See, e.g.*, *Atiqi v. Acclaim Tech. Servs., Inc.*, No. ED-CV-14628 (VAP/SPX), 2016 WL 2621946 at *9, (C.D. Cal. Feb. 11, 2016) (declining to apply *Boyle* in employment dispute between employee and federal contractor because "there is no conflict between California Labor Code and the military interest"); *O'Connor v. Boeing N. Am., Inc.*, No. CV 00-0186 (DT), 2005 WL 6035255 at *19–20 (C.D. Cal. Aug. 18, 2005) (declining to apply *Boyle* defense where defendant had not demonstrated conflict between an important federal interest and state law); *Dorse v. Armstrong World Indus., Inc.*, 716 F. Supp. 589, 591 (S.D. Fla. 1989), *aff'd sub nom. Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487 (11th Cir. 1990) (finding *Boyle* not a defense to failure-to-warn claim where "the state-imposed duty of care . . . [was] not 'precisely contrary' to the duty imposed by the government contract").

Because DuPont has failed to identify the necessary federal-state conflict, it has failed to meet its burden of showing that its *Boyle* defense is "legitimate and could reasonably be asserted, given the facts presented and the current law," *Papp*, 842 F.3d at 815 (defining "colorable") (citation omitted).  That reason is sufficient to remand this case to the Superior Court of New Jersey.

**B.    The *Boyle* Products Liability Defense Does Not Apply to the State's Environmental Contamination Claims.**

DuPont's purported *Boyle* defense is also not colorable because, as *Boyle* itself makes clear, it is a products liability defense that has no applicability because the State does not allege a single claim for products liability against DuPont.[5]

*Boyle*'s three substantive elements—(1) that the federal government set reasonably precise specifications for the product, (2) that the defendant conformed its products to those specifications, and (3) that the defendant warned the federal government of the product's latent dangers, 487 U.S. at 512—all speak to traditional products liability concerns: product design, foreseeability of danger, and the need to make reasonable warnings. *See, e.g.*, *Bass v. Air Prod. & Chemicals, Inc.*, No. A-4542-03T3, 2006 WL 1419375, at *11 (N.J. Super. Ct. App. Div. May 25, 2006) (explaining  that "[t]he elements of a *prima facie* case of strict liability for design defects are proof that (1) the product design was defective; (2) the defect existed when the product was distributed by and under the control of defendant; and (3) the defect caused injury to a reasonably foreseeable user.").  In *Papp*, the Third Circuit extended *Boyle* beyond the design defect context to failure-to-warn claims, because the same concerns apply to both subsets of products liability claims.  842 F.3d at 814 (noting that each substantive *Boyle* element "could be rephrased" to state a failure-to-warn defense).

But *Boyle*'s three substantive elements are facially inapplicable to the State's environmental claims, which turn not on how a product was designed, a warning that should have been given, or the foreseeability of danger, but rather on the discharge of hazardous substances and pollutants.  For instance, the New Jersey Spill Act, which provides the basis for

---

[5]    In the Parlin litigation the State does allege claims for strict products liability against defendant 3M.  But 3M has not sought removal and DuPont acknowledges in its notice of removal that the State does not allege such claims against it.  *See* Ex. A at 8 n.1.

the State's first count against DuPont, provides that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."  N.J. Stat. Ann. § 58:10-23.11g.  As this broad remedial language makes clear, it is utterly irrelevant to the State's Spill Act claim how DuPont designed any product or whether it warned anybody about the dangers of its conduct.  The same is true for the State's common-law claims against DuPont of public nuisance, trespass, and negligence.  It is not possible to simply "rephrase" *Boyle's* substantive elements to offer a defense against any of the State's claims.  *Papp*, 842 F.3d at 814.

For this reason, courts have generally declined to apply *Boyle* outside of the products liability context, including to environmental claims.  For example, in *Anderson*, discussed *supra* at 12, the plaintiffs alleged that Monsanto had released hazardous substances into the environment.  Monsanto removed pursuant to § 1442(a)(1) and asserted they had colorable federal defenses, including under *Boyle*.  The district court squarely rejected that assertion:

> Plaintiffs do not assert that the Monsanto Defendants produced a flawed product.  Rather, they assert that the Monsanto Defendants produced, stored and disposed of their products in a shoddy manner that resulted in leaks and spills of hazardous substances. . . .  Defendants have . . . [not] articulated any government requirement that prevented them from [avoiding the complained of contamination].  Accordingly, the Monsanto Defendants do not present a colorable government contractor defense.

646 F. Supp. 2d. at 1052–53 (internal citations omitted).  This case is on all fours with *Anderson*, and for the same reasons, DuPont's *Boyle* defense is not colorable here.  *See also Aegis Defense Services, LLC v. Chenega-Patriot Group, LLC*, 141 F. Supp. 3d 479, 489 (E.D. Va. 2015). (declining to apply *Boyle* to state tort claims such as tortious interference, because there was no evidence "that the defendant's allegedly tortious activity was done at the direction of the federal

government as part of the federal government's discretionary decision-making in the national security context" and the acts complained of were "wholly apart from any government decision").

DuPont cites in its Notice of Removal to *New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 404 (D.N.J. 2005) for support of its argument that it has made a colorable assertion of a federal defense. *See* Ex. A at ¶ 40. In *Exxon*, the court explained that although it was "not entirely clear that [a *Boyle*] defense, which sounds in products liability, would apply . . . such an analysis goes to the merits of the defense and not to the question of whether the defense is 'colorable.'" *Id.* at 404. But *Exxon*'s four-sentence analysis on this question is not binding or persuasive, and it is inconsistent with subsequent Third Circuit precedent.

As an initial matter, the *Exxon* court did not have the benefit of the guiding language of *Papp*, ("[a]t the removal stage, [a defendant] need[] only show that its asserted *Boyle* defense [is] 'colorable,' which is to say that the defense [is] *legitimate* and [can] *reasonably be asserted*, given the facts presented and the current law"), or the *Papp* court's analysis of whether *Boyle* could possibly be applied outside of the narrow context in which it was announced. 842 F.3d at 815 (emphasis added); *see supra* at 9–10 (discussing *Papp*). The *Exxon* court made no attempt to determine whether *Boyle* could reasonably or legitimately be asserted against the State's claims—it merely thought that the fact that there was an open legal question was enough. Under *Papp*'s subsequent holding, that analysis is insufficient.

But, more importantly, the *Exxon* court's colorable determination was not necessary to the judgment before it—it went on to conclude that Exxon had failed to meet the removal statute's "causal nexus" requirement, and thus remanded. 381 F. Supp. 2d at 404–05. Its

20

cursory *Boyle* analysis was therefore dicta, because it was not necessary to the ultimate disposition of the case.  *See In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570, 584 (3d Cir. 2014) (defining dicta as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." (internal quotations omitted)).

Based on the logic of *Boyle* itself, the reasoned opinions interpreting it, and the nature of the claims at issue here, this Court should hold that DuPont's assertion of this products liability defense in this environmental litigation is not colorable, and the Court could remand on that basis alone.

### C.  Even if *Boyle* Could Apply, DuPont Has Failed to Allege Facts Supporting Its Applicability Here.

For the reasons given above, *Boyle* simply does not apply to the environmental contamination claims the State has brought in this case.  But even if it could, DuPont would still need to allege facts that—if proved at trial—would "establish[] a *prima facie* defense under *Boyle*."  *Papp*, 842 F.3d at 815.  It has failed to do so.

*Boyle*'s first two substantive elements are that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications."  487 U.S. at 512. But DuPont has failed to even allege, let alone produce evidence, that the government provided *any* direction as to how it should handle or discharge hazardous substances, or that DuPont conformed to such specifications.  As a point of contrast, the defendant in *Papp* (Boeing) demonstrated that its warnings satisfied these two elements by providing facts showing that:

> the government exercised *complete control* over "any markings or labels on [Boeing] aircraft or aircraft components," that in-person meetings occurred between Boeing and government personnel where warnings were discussed, and

that "[t]he contents, including any warnings, of any technical manuals . . . were directed, reviewed, and approved by" the government.

842 F.3d at 814 (emphasis added); *see also Arness v. Boeing North Am.*, 997 F. Supp. 1268, 1272–73 (C.D. Cal. 1998) (finding the asserted *Boyle* defense colorable where a federal contractor alleged it had used the substance at issue pursuant to a specific contractual requirement).  Other courts have held a *Boyle* defense not to be colorable where such evidence was lacking.  *See, e.g.*, *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 665–66 (E.D. Tex. 1999) (finding defendants had not asserted a colorable federal defense under *Boyle* to plaintiff's failure-to-warn claims because "the federal government did not dictate any specifications regarding the *warning* about asbestos-containing products—let alone demand Defendants insulate their facilities with asbestos-containing products.").  Here, DuPont has merely claimed the government contracted with it to manufacture certain products—it has made no showing that the government exercised any control, let alone "complete control," *Papp*, 842 F.3d at 814, over how it discharged hazardous substances and pollutants.

Nor has DuPont supplied any allegations or evidence relating to *Boyle*'s third substantive element, namely, that DuPont warned the government of any dangers that it knew about but the government did not.  *Boyle*, 487 U.S. at 512.

The Notice of Removal is notably devoid of *any* allegations that the three substantive *Boyle* elements could possibly be proven in this case.  Unlike in *Papp*, where a detailed factual affidavit that supported each of these elements was attached to the notice of removal, DuPont belatedly provided to the State some documents that purportedly support federal officer removal but contain no evidence that the three substantive *Boyle* elements could be proven at trial.  For that reason alone, this case should be remanded to the Superior Court of New Jersey.

22

## II.   THE STATE'S CLAIMS ARE NOT "FOR OR RELATING TO" AN ACT UNDER COLOR OF FEDERAL OFFICE.

Independent of DuPont's lack of a colorable federal defense, this case should be remanded because the defendant has not met its burden of proving that the relevant conduct—discharging hazardous substances and pollutants into New Jersey's natural resources—was "for or relating to any act under color of [federal] office."  28 U.S.C. § 1442(a)(1).  To meet this requirement, DuPont must show a "connection or association between the act in question and the federal office."  *Papp*, 842 F.3d at 813.

Courts have long drawn a distinction between a defendant's *manufacturing* operations and the *discharge and disposal* of hazardous substances and pollutants resulting from those manufacturing operations—and where a plaintiff's allegations relate only to the latter, the removal statute's "for or relating to" prong is not satisfied unless the federal contract at issue provides instructions for how hazardous substances should be discharged.  *See New Jersey Dep't of Envtl. Prot. v. Viacom, Inc.*, No. 06-1753 (HAA), 2006 WL 3534364, at *1 (D.N.J. Dec. 7, 2006); *New Jersey Dep't of Envtl. Prot. v. Dixo Co., Inc.*, No. 06-1041(SRC), 2006 WL 2716092, at *4 (D.N.J. Sept. 22, 2006); *Brown v. Cerro Flow Prods., Inc.*, No. 09-582 (GPM), 2010 WL 55905, at *5 (S.D. Ill. Jan. 4, 2010); *Robson v. Monsanto Co.*, No. 3:09-cv-01486 (JRG), 2010 WL 11565114, at *6–7 (S.D. W.Va. Sept. 29, 2010); *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 495 (S.D.W.Va. 2009); *Custer v. Cerro Flow Prods. Inc.*, No. 09-514 (DRH), 2009 WL 5033931, at *7 (S.D. Ill. Dec. 15, 2009); *Ward v. Lockheed Martin Corp.*, No. 805-cv-1878 (EK) 2006 WL 889729 at *5 (M.D. Fla. Mar. 31, 2006); *Arness v. Boeing North Am.*, 997 F. Supp. 1268, 1274–75 (C.D. Cal. 1998); *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 970 (D. Ariz. 1992).

In contrast to the cases just listed (and this one), in *Mason v. KBR, Inc.*, No. 09-2083 (RWT), 2012 WL 12517199, at *3 (D. Md. Jan. 12, 2012), the court held that the removing military contractor defendants *had* met the removal statute's causation requirement where they had shown that the manner in which they disposed of waste on military bases in Iraq and Afghanistan (the basis of the plaintiffs' state-law claims) was *specifically mandated* by the federal government.  In *Mason*, the defendants supported their notice of removal by submitting affidavits from five military witnesses who attested that the United States military decided to use burn pits for waste disposal, decided the location of those burn pits, and decided what items could be disposed in the burn pits.  *Id.*  Moreover, the defendants referenced a Department of Defense Report to Congress, which noted that the military dictated the manner in which burn pits were used in Iraq and Afghanistan and that this control was necessitated by the lack of a commercial solid waste management industry and security concerns in those countries.  *Id.*

To be sure, most of the cases cited above were decided under a prior version of the removal statute, which provided removal of claims that are "for an act under color of [federal] office."  *See Viacom, Inc.*, 2006 WL 3534364, at *2 (quoting prior language of § 1442(a)(1)).  In 2011, Congress added the words "or relating to," so that the statute now allows removal of claims that are "for or relating to an act under color of such office."  *See* Pub. L. 112-51, § 2(a), (b) (2011).  In light of this amendment, the Third Circuit has taken "a more permissive view of" the causation requirement, now permitting removal where there is "a connection or association between the act in question and the federal office."  *Papp*, 842 F.3d at 813 (quoting *Def. Ass'n*, 790 F.3d 457, 470 (3d Cir. 2015)).

Yet even under this more permissive view, DuPont has not demonstrated the requisite connection.  In its Notice of Removal, DuPont alleges that its contracts with the federal

government "compelled [it] to vastly increase the volume of chemical compounds manufactured at Repauno.  The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes."  Ex. A at ¶ 12. According to DuPont, this means that "the 'for or relating to' prong is satisfied because the *production* of hazardous substances ordered by the government at Repauno makes up a significant portion of Plaintiffs' alleged harm."  *Id.* ¶ 37 (emphasis added).  In other words, DuPont suggests that, because its federal contracts were a but-for cause of some of its hazardous discharges, the Court should find that these discharges were acts under color of federal office.

These bare bone assertions are far beyond the bounds of the type of association the federal officer removal statute is meant to encompass.  The Third Circuit has made clear that there must be a *direct* connection or association between the unlawful act and the federal government's control *over that act*.  *Papp*, 842 F.3d at 813.

In *Papp* the court noted that, in addition to providing precise specifications for the product at issue (an aircraft), the government's control "extended to 'the content of written materials and warnings associated with such aircraft.'"  *Id.* (emphasis added, internal citation omitted).  The court concluded that those alleged facts satisfied the "for or relating to" requirement because "they demonstrate *a direct connection between the federal government and the failure to warn Papp*."  *Id.* (emphasis added).  In the only other case in which the Third Circuit has applied the post-2011 standard, *Defender Association*, it found that the conduct at issue—representation by federally employed public defenders of state habeas petitioners, which the Commonwealth of Pennsylvania had sought to enjoin—"undoubtedly 'relate[s] to' acts taken under federal office," because the fact that those attorneys were federal employees "was the very basis" of the Commonwealth's complaint.  790 F.3d at 472 (noting such representation was

"closely related to" the federal defenders' employment duties).  Thus, the court concluded that the direct connection between the federal office and the act complained of was "significant enough to convince us that the Federal Community Defender's actions in [state habeas] litigation 'relate to' its federal duties and purposes."  *Id.*

No such direct connection exists here, because no "act under color of federal office," 28 U.S.C. § 1442(a)(1), was involved in any way with determining how DuPont handled or discharged hazardous substances and pollutants.  If the causal relationship DuPont asserts—that its federal contracts caused hazardous substance and pollutant discharges that were "inherently associated with" DuPont's normal manufacturing process,[6] Ex. A at ¶ 12—were sufficient, neither the *Papp* nor *Defender Association* court would have undertook the analysis they did. That is, if DuPont's proposed standard were the rule, the court in *Papp* would have had no need to examine the level of control the government exercised over the warnings; it would simply have said that "the warnings were inherently associated with the aircraft's production."  But instead, it looked more closely, and found the statute's causal requirement to be satisfied by a more "direct connection," *i.e.*, the government's complete control *over the warnings themselves*. *Papp*, 842 F.3d at 813.

So too in *Defender Association*.  If any federal involvement whatsoever satisfied the statute, the court would have had no need to inquire into the relationship between the Commonwealth's claims and the federal defenders' specific federal duty.  *Def. Ass'n*, 790 F.3d at 472 ("The Commonwealth has filed these motions to litigate whether the Federal Community

---

[6] DuPont has provided no factual evidence for its assertion that hazardous discharges were "inherently associated with" DuPont's normal manufacturing process and therefore that it could not comply both with its federal contractual obligations and New Jersey environmental law, thus providing another independent basis for remand.  *See supra* at 10–13.

Defender is violating the federal authority granted to it.").  After all, the defendants there *were federal employees*—yet the court nonetheless determined the statute was satisfied only after noting that the specific acts complained of were taken pursuant to a federal duty.  These cases demonstrate that much more is needed than the tangential connection DuPont asserts here.

So too does common sense, as well as the Supreme Court's admonition that the federal officer removal statute be interpreted such that its reach is not "limitless."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *cf. Zeringue v. Crane Co*., 846 F.3d 785, 793–94 (5th Cir. 2015) (while the 2011 amendment has "expanded the breadth of acts sufficient to establish a causal nexus even further," courts cannot "attenuate the causal nexus requirement to the point of irrelevance." (quotation omitted)).  If there were no requirement that a suit be about what the federal government *actually controlled and contracted for*, any lawsuit against DuPont (or any other manufacturer that performed a federal contract) could be litigated in federal court.  The logical extension of DuPont's argument is that anytime the federal government contracts for the manufacture of a product, federal officer removal jurisdiction is created over subsequent environmental contamination suits brought pertaining to the entire facility where that product was manufactured, because there must have been *some* discharge from that manufacturing.  And, if, for example, DuPont had engaged in discriminatory hiring practices while fulfilling a federal procurement order, or if it had failed to pay its workers a minimum wage, it could remove a state law case about those issues to federal court simply by saying that "those practices were inherent in the way we do business, and some of our business at the time was done for the federal government."  Yet those cases (and this one) belong in state court, because they lack the requisite causal connection—that the conduct that violated state law was taken under color of federal office.

Enforcing this important limitation comports with the removal statute's "language, context, history, and purposes," none of which support federal jurisdiction over the present suit. *Watson*, 551 U.S. at 147.  The statute was enacted to protect "the Federal Government from the interference with its operation' that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting . . . within the scope of their authority."  *Id.* at 150 (internal quotations omitted); *see also Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977) (noting the statute was "designed to permit Federal officers to perform their duties without State interference").

Even the language added in the 2011 amendment was concerned with a situation far afield from this case—ensuring that federal officials could remove cases brought under state "pre-civil suit discovery statutes."  H.R. Rep. No. 112–17, pt. 1, at 4 (2011)) ("Given that 47 states have enacted pre-civil suit discovery statutes, the General Counsel's Office recommends that the relevant portions of [§§] 1442 and 1447 be amended *to take into account the operation of these State pre-civil suit discovery statutes*." (emphasis added)); *see also Guggenberger v. Starkey Labs., Inc.*, No. CV 16-2021 (JRT/LIB), 2016 WL 7479542, at *6 (D. Minn. Dec. 29, 2016) (noting that the 2011 amendment "was a direct response to the widespread state practice permitting pre-suit discovery in state court").

As these authorities demonstrate, the federal officer removal statute applies where there is a possibility that a federal officer, or one acting under her direction, would be frustrated in carrying out the government's will by state court litigation.  Yet on the allegations and evidence DuPont has presented, no such interest is implicated, because the federal government had no direction over—and exercised no control of-—DuPont's longstanding discharges of hazardous

substances and pollutants into New Jersey's natural resources.  Because these acts violated state law and were not directly connected or associated with any act under color of federal office, this case belongs in state court.

## CONCLUSION

For the reasons stated above, the State plaintiffs respectfully request that the Court remand this litigation to the Superior Court of New Jersey for lack of subject matter jurisdiction.

Respectfully submitted,

Dated: September 20, 2019

**Gurbir S. Grewal**
**ATTORNEY GENERAL OF NEW JERSEY**
*Attorneys for Plaintiffs*

By:  s/ Gwen Farley
Gwen Farley
Deputy Attorney General
 (Atty. ID #000081999)
Richard J. Hughes Justice Complex
25 Market Street; PO Box 093
Trenton, New Jersey 08625-0093
Tel.: (609) 376-2761

**COHN LIFLAND PEARLMAN**
 **HERRMANN & KNOPF LLP**
Special Counsel to the Attorney General

By:  s/ Leonard Z. Kaufmann
Leonard Z. Kaufmann
 (Atty. ID #045731994)
A Member of the Firm
Also by:  Joseph A. Maurice
                Christina N. Stripp
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600

**KELLEY DRYE & WARREN LLP**
Special Counsel to the Attorney General
By:   William J. Jackson
        John Gilmour
515 Post Oak Blvd. Suite 900
Houston, Texas 77027
Tel.:  (713) 355-5000

        David Reap
101 Park Avenue
New York New York 10178
Tel.:  (212) 808-7800

        Melissa E. Byroade
Washington Harbour, Suite 400
3050 K Street NW
Washington, D.C. 20007

**LAW OFFICES OF JOHN K. DEMA, P.C.**
Special Counsel to the Attorney General
By: John K. Dema
      Scott E. Kauff
      John T. Dema
      James Crooks
      Elise Keys*
      *Admission to the Bar of New Jersey Pending*
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
Tel.: (340) 773-6142