UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| New Jersey Department of Environmental Protection, et al., | 1:19-cv-14765-NLH-JS |
| Plaintiffs, | OPINION |
| v. | |
| E.I. Du Pont De Nemours and Company, et al., | |
| Defendants. | |

**APPEARANCES:**

GURBIR S. GREWAL, ATTORNEY GENERAL OF NEW JERSEY
GWEN FARLEY, DEPUTY ATTORNEY GENERAL
RICHARD J. HUGHES JUSTICE COMPLEX
25 MARKET STREETL PO BOX 093
TRENTON, NJ 08625

LEONARD Z. KAUFMANN
COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP
PARK 80 PLAZA WEST ONE
SADDLE BROOK, NJ 07663

WILLIAM J. JACKSON
JOHN GILMOUR
DAVID REAP
MELISSA E. BYROADE
515 POAST OAK BLVD., SUITE 900
HOUSTON, TX 77027

SCOTT E. KAUFF
JOHN T. DEMA
JAMES CROOKS
ELISE KEYS*
LAW OFFICES OF JOHN K. DEMA, P.C.
1236 STRAND STREET, SUIT 103
CHRISTIANSTED, ST. CROIX

U.S. VIRGIN ISLANDS 00820

    Attorneys for the Plaintiff.

LANNY S. KURZWEIL
JOHN J. MCALEESE III
ALISON MORRISSEY
AMANDA G. DUMVILLE
MCCARTER & ENGLISH, LLP
FOUR GATEYWAY CENTER
100 MULBERRY ST
NEWARK, NJ 07102

GLENN A. HARRIS
DAVID A. HAWORTH
BALLARD SPAHR
210 LAKE DRIVE EAST, SUITE 200
CHERRY HILL, NJ 08002

    Attorneys for Defendant E.I. Du Pont De Nemours and Company.

**HILLMAN**, **District Judge**

    Pending before the Court is Plaintiffs' motion to remand this case to New Jersey Superior Court.  For the reasons stated below, this Court will deny Plaintiffs' motion to remand.

**BACKGROUND**

The Parties

    The New Jersey Department of Environmental Protection ("the Department") is a department within the Executive Branch of the New Jersey State Government.  The Department is led by Commissioners of the Department of Environmental Protection ("the Commissioner").  The Department is charged with conserving national resources, protecting the environment, preventing

2

pollution, and protecting public health and safety.

The Chief Executive Officer of the New Jersey Spill Compensation Fund ("the Fund") is referred to as "the Administrator" in this Opinion. As CEO of the Fund, the Administrator is authorized to approve and pay any clean up or removal costs the Department incurs and to certify the amount of any claim to be paid from the Fund.

The New Jersey Department of Environmental Protection, the Commissioners of the Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund, are collectively referred to as "Plaintiffs" in this Opinion.

E.I. Du Pont De Nemours ("DuPont") is a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.

The Chemours Company ("Chemours Co.") is a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. In 2015, DuPont transferred some of its performance chemical business and certain environmental liabilities to Chemours Co.

The Chemours Company FC, LLC ("Chemours FC") is a limited liability company organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. Chemours FC is a subsidiary of Chemours Co. that was formed in April 2014. Chemours FC began operations as a standalone company in

3

July 2015, taking charge of the operations, assets, and certain limited liability of DuPont's performance chemicals.  Chemours Co. and Chemours FC are referred to collectively as "Chemours."

Plaintiffs have also named ABC Corporations 1-10 as defendants.  These names are fictitious and the identifies of these corporations and their relationship to the named defendants has not yet been determined.

The Current Matter

On May 31, 2019, Plaintiffs filed a First Amended Complaint ("FAC") against Defendants in New Jersey Superior Court. Plaintiff served DuPont with the FAC on June 10, 2019.

The FAC contains eight counts: (1) Violations of the Spill Act, N.J.S.A. 58:10-23.11 to 23.24 (all Defendants); (2) Violations of the Water Pollution Control Act, N.J.S.A. 58:10A to 20 (all Defendants); (3) Violations of the Solid Waste Management Act, N.J.S.A. 13:1E-1 and N.J.S.A. 13:1D-1 (all Defendants); (4) Public Nuisance (all Defendants); (5) Trespass (all Defendants); (6) Negligence (all Defendants); (7) Actual Fraudulent Transfer, Del. Code tit. 6, §§ 1301-1312, N.J.S.A. 25:2-20 to 25:2-34 (DuPont and Chemours Co.); and (8) Constructive Fraudulent Transfer, Del. Code tit. 6, §§ 1301-1312, N.J.S.A. 25:2-20 to 25:2-34 (Dupont and Chemours Co.). Plaintiffs seek costs and damages for injuries to natural resources of the State, including surface water, groundwater,

4

sediments, wetlands, air, soils, ecological resources, biota, and the public fisc.

Plaintiffs' FAC alleges that Defendants have damaged 1,856 acres of property located at 200 North Repauno Avenue in Gibbstown, New Jersey.  This property is referred to as the "Repauno Site."  Plaintiffs allege that this site is "surrounded by freshwater wetlands, the Delaware River, the Repauno Creek, and residential neighborhoods."

According to the FAC, Defendants have "engaged in the manufacture, storage, and transport of industrial chemicals and high explosive products" at the Repauno Site.  In the course of these actions, Plaintiffs alleged that Defendants have "generated a diverse and significant amount of hazardous waste, including dimethyl terephthalate heels, aniline heavy waste oil, aniline tar heels, and waste nitrobenzene mixtures."

According to Plaintiffs, during World War I, DuPont plants at the Repauno site produced explosives to support the United State government's demand for ammunition.  Plaintiffs allege that in 1917, as part of its support for the United States Government, DuPont expanded its operations to include production of nitrobenzene, aniline, and diphenylamine.  Plaintiffs further allege that during World War II, DuPont again answered the United States government's call for weapons.  This time, DuPont expanded its production to include explosives such as nitramon,

amatol, pentaerythritol tetranitrate, trinitrotoluene, hexite, and tetryl.  According to Plaintiffs, DuPont ceased manufacturing these explosives in 1954.

Following the World Wars, DuPont continued to produce various products at the Repauno Site.  These products include oleum (also known as "fuming sulfuric acid"), dimethyl terephthalate (DMT), ammonia, industrial diamonds, pyromellitic dianhydride (PMDA), sodium nitrate, and nitrosysulfuric acid. (NSA).

Plaintiffs allege that DuPont sold the Repauno Site to Chemours FC in 2015.  Through this transaction, Chemours FC accepted responsibility for all remediation of the Site and any other property containing hazardous substances from the Site.

Defendant DuPont removed this action to this Court pursuant to 28 U.S.C. § 1442(a) on July 5, 2019.[1]  On September 20, 2019, Plaintiffs moved to remand this case back to the Superior Court of New Jersey, alleging that DuPont had failed to meet its burden of showing that this Court has subject matter

---

[1] In this case, removal under 28 U.S.C. § 1332 for diversity jurisdiction was not an option.  It is well established that "federal courts cannot entertain a suit in diversity jurisdiction against a state or its Alter ego." Blake v. Kline, 612 F.2d 718, 726 (3d Cir. 1979).  It is also well settled that "a suit between a State and a citizen of another State is not a suit between citizens of different States for the purposes of diversity of citizenship jurisdiction." Illinois v. City of Milwaukee, Wis., 406 U.S. 91, 97 n. 1(1972).

jurisdiction. This matter has been fully briefed and is ripe for adjudication.[2]

## DISCUSSION

A. Legal Standard

28 U.S.C. § 1442(a)(1) provides that a defendant may remove a civil suit brought in state court "to the district court of the United States for the district and division embracing the place wherein it is pending" if the defendant is "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." See 28 U.S.C. §1442(a)(1). The Third Circuit has held that the language of this statute is "to be liberally construed in favor of the federal forum." Cessna v. Rea Energy Cooperative, Inc., 753 Fed. Appx. 124, 1127 (3d Cir. 2018) (citing Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147 (2007)).[3]

"The party asserting jurisdiction bears the burden of

---

[2] There are several pending parallel cases in this district. To the extent that they are relevant, the Court has reviewed the analysis of these cases to inform this Opinion.
[3] The Court notes that Plaintiffs' citation to Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3d Cir. 1990), which counsels that the removal statute should be narrowly construed in favor of remand, is inapposite as Boyer concerned removal under § 1441, not §1442(a)(1). See Seigfried v. Allegheny Ludlum Corp., No. 09-125, 2009 WL 1035001, at *7 n. 3 (D.N.J. Apr. 17, 2009).

7

showing that at all stages of the litigation the case is properly before the federal court." Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004). In order to properly remove a case from state court to federal court on such a basis, the defendant bears the burden of showing:

> (1) [it] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to[,]" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812 (3d Cir. 2016).

In Papp, the Third Circuit opined that a "motion to remand shares essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)" and therefore it should be "evaluated using the same approach." Papp, 842 F.3d at 811. Subject matter jurisdiction can be challenged either through a facial or a factual attack. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the [notice of removal], and it requires the court to consider the allegations . . . as true." Id. (internal quotation marks and citations omitted). In contrast, a factual attack "disputes

8

'the factual allegations underlying the [] assertion of jurisdiction,' and involves the presentation of competing facts." Papp, 842 F.3d at 811 (quoting Davis, 824 F.3d at 346).

## B. Analysis

In this case, the parties agree that Plaintiffs have launched a facial attack on DuPont's claim that subject matter exists. The Court will therefore "construe the facts in the removal notice in the light most favorable to" DuPont, as the removing party. See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila., 790 F.3d 457, 466 (3d Cir. 2015) ("Defender Ass'n"). However, as the party asserting jurisdiction, DuPont bears the burden of showing that this case is properly before this Court. See Samuel-Bassett, 357 F.3d at 396.

The Court will assess whether this case was properly removed and whether this Court has subject matter jurisdiction.

1. DuPont is a "person within the meaning of the statute"

DuPont's status as a "person" within the meaning of the statute is undisputed. Section § 1442(a)(1) does not itself define the term person. See 28 U.S.C. § 1442. Therefore, the Court must refer to § 1 of Title 1 of the United States Code, which defines "person" as including "corporations, companies, associations, firms, partnerships, societies, and joint stock

9

companies, as well as individuals." 1 U.S.C. § 1.  Under this definition, DuPont is a legal person.

2. DuPont was "acting under" a federal officer or agency

This prong is also not in dispute in this case.  Similar to the federal removal statute as a whole, this requirement is to be liberally construed to "cover actions that involve 'an effort to assist or to help carry out, the federal supervisor's duties or tasks.'"  Papp, 842 F.3d at 812 (citing Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012)).  Where a "federal government uses a private corporation to achieve an end it would otherwise use its own agents to complete," the corporation is deemed to be "acting under" the authority of a federal officer.  Id.

Construing the facts in a light most favorable to DuPont, and consistent with Plaintiffs' own allegations in the FAC, the Court finds that DuPont has met its burden for this prong.

3. Whether Plaintiff's claims concern acts "for or relating to" an act under color of federal office

This requirement is often referred to as the "nexus" or "causation" requirement because it demands that a defendant "show a nexus, a causal connection between the charged conduct and the asserted official authority."  Jefferson County, Ala. V. Acker, 527 U.S. 423, 431 (1999).  As DuPont notes, the language "or relating to" was added to this statute in 2011 and intended

10

to "broaden the universe of acts that enable Federal offers to remove [suits] to Federal court." Papp, 842 F. 3d at 813 (citing H.R. Rep. No. 112-17, pt. 1, at 6 (2011)). The Third Circuit has taken "a more permissive view of this requirement." Id. It is now "sufficient for there to be a connection or association between the act in question and the federal office." Id. (quoting Defender Ass'n, 790 F.3d at 471).

Plaintiffs interpret this prong to require that a plaintiff's claims must be about "what the federal government *actually controlled and contracted for*" in order to be preempted. ECF No. 29-2 at 27 (emphasis in original). Plaintiffs argue that "courts have long drawn a distinction between a defendant's *manufacturing* operations and the *discharge and disposal* of hazardous substances and pollutants resulting from those manufacturing operations." Id. at 23 (emphasis in original). According to the Plaintiffs, when the claims relate only to discharge and disposal, this prong of the removal test is not satisfied "unless the federal contract at issue provides instructions for how hazardous substances should be discharged." Id. (citing cases). Plaintiffs acknowledge that DuPont produced explosives "to support the demand for ammunition" from the Federal Government. ECF No. 1-2, ¶¶ 63-65. However, Plaintiffs argue that DuPont's assertions of but-for causation between the

government contracts and the hazardous discharges is insufficient to satisfy this prong.

DuPont counters that to satisfy this requirement it only needs to "demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the government." ECF No. 33 at 7 (citing Isaacson v. Dow Chem. Co., 517 F.3d 129, 137 (2d Cir. 2008)) (emphasis in original). In Isaacson, manufacturers who contracted with the government to produce Agent Orange were sued by Vietnam War veterans who alleged they had been injured by exposure to Agent Orange. In Re "Agent Orange" Product Liability Litigation, 304 F.Supp.2d 422, 444 (E.D.N.Y. 2004). The Second Circuit held that the defendant manufacturers had satisfied the causal element of the test for removal jurisdiction because "the Government knew that Agent Orange contained dioxin and the government controlled the method of formulation." Isaacson, 517 F.3d at 138.

DuPont argues that the facts of Isaacson are directly applicable to the current case.[4] ECF No. 33 at 9. DuPont alleges that the discharges Plaintiffs base their state court claims on are "like the inherent production of dioxin in Isaacson" and "arose from DuPont's execution of their duties

---

[4] DuPont acknowledges that Isaacson was decided in 2010, before the 2011 amendment to the removal statute that added "or relating to."

12

outlines in the government contracts." Id. at 10.

The Court finds that Isaacson is distinguishable from the current case. Isaacson presents a question of products liability, while the current case does not. Though this fact does not render Isaacson wholly inapposite, it does inform the Court's analysis. As DuPont points out in its brief, the federal government "controlled the method of formulation" of Agent Orange in Isaacson. DuPont has not shown that the federal government exercised the same control over the waste disposal methods used at the Repauno Site.

However, because Plaintiffs have launched a facial attack, the Court will take DuPont's allegations in the notice of removal as true. See Papp, 842 F.3d at 811. DuPont has alleged that the manufacturing process of certain materials at the Repauno Site was at behest of the government and is related to the discharges that from the basis of Plaintiffs' complaint. Despite the differences between Issacson and the current case and in light of the Third Circuit's more permissive view of this requirement, the Court finds that DuPont has shown that Plaintiffs' claims share a substantial connection to acts done under the color of federal office. See New Jersey Department of Environmental Protection, et al. v. E.I. Du Pont De Nemours & Company, et al., No. 19-14767-MAS-ZNQ, 2020 WL 2041382, at *2-3 (holding that DuPont satisfied this requirement and ultimately

denying the plaintiff's motion to remand). DuPont has satisfied this requirement.

   4. Whether DuPont raises colorable defenses

At this stage, the Court's role is "not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense." Cuomo v. Crane Co., 771 Fed 113, 117 (2d Cir. 2014). Put differently, a party is not required to "win his case before he can have it removed." Acker, 527 U.S. at 431.

DuPont asserts that it is entitled to the federal contractor defense articulated in Boyle v. United Technologies Corp., 487 U.S. 500 (1988). Under Boyle, a federal contractor cannot be held liable for a state tort if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in use of the equipment that were known to the supplier but not to the United States." Id. at 513.

DuPont further relies on Yearsley v. W.A. Ross. Const. Co., 309 U.S. 60 (1940) to argue that it has a colorable defense of "derivative sovereign immunity." In Yearsley, the Supreme Court held that "it is clear that if this authority to carry out [a project] was validly conferred, that is, if what was done within

14

the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." Id. at 20-21.  The Supreme Court explained instances of contractor liability by stating "[w]here an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." Id. at 21. DuPont alleges that its authority was validly conferred and that it acted within its authority when manufacturing chemicals at the Repauno Site.

Plaintiffs argue that DuPont does not have a colorable defense under Boyle or Yearsley for three reasons: (1) a defense under Boyle "is a species of preemption" and only applies where there is a "'significant conflict' . . . between federal policy or interest and the operation of state law"; (2) Boyle applies to products liability cases, not the current matter; (3) even if Boyle did apply, DuPont has not alleged the necessary facts. Plaintiffs argue that DuPont cannot assert a defense under Yearsley because it "must be held to the facts and defenses averred in their Notice of Removal."  ECF No. 36 at 2. Plaintiffs further allege that DuPont has failed to assert a colorable defense under Yearsley because "that case did not involve (as this one does) discretionary actions that a

15

contractor took while performing a government contract." Id.

Several courts, including a judge in this District, have questioned whether a defense under Boyle and a defense under Yearsley are separate and distinct defenses. See e.g., New Jersey Department of Environmental Protection, et al. v. E.I. Du Pont De Nemours & Company, et al., No. 19-14676 MAS-ZNQ, 2020 WL 2041382, at *3-4 (D.N.J. Apr. 28, 2020); see also Cabalce v. VSE Corp., 922 F.Supp.2d 1113, 1123 (D. Haw. 2013). The Court will first consider whether DuPont has raised a colorable defense under either Boyle or Yearsley.

In Boyle, the Supreme Court held that "procurement of equipment by the United States is an area of uniquely federal interest." Boyle, 487 U.S. at 507. However, this procurement of equipment is a necessary, but not sufficient condition for displacing state law in claims against government contractors. Id. Under Boyle, "[d]isplacement will only occur where . . . 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' or the application of state law would 'frustrate specific objectives' of federal legislation." Id. (internal citations omitted). The requirements for this conflict are less stringent than the conflict that must exist for ordinary field preemption. Id. (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

16

Here, DuPont has shown that the federal government had an explicit interest in exponentially increasing the production of certain chemicals during World War I and World War II.  See ECF No. 33-5, Exhibit E at 67 (discussing the government's "haste to produce atomic bombs during the war" and willingness to take certain risks in "research production, testing, transportation and waste disposal with the understanding that subsequently more effective control measures would ameliorate these risks and lessen the hazardous conditions formerly created").

The Court finds that under the less stringent requirements for conflict, Boyle is applicable to this case.  The Court will next assess whether DuPont has adequately pleaded the elements of a Boyle defense at this stage.  DuPont has shown that DuPont followed what few specifications the government approved with regards to waste removal.  Plaintiffs do not contend that the products DuPont supplied did not conform to the standards the federal government set.  As for DuPont's duty to warn, DuPont alleged in its notice of removal that the federal government was aware of the dangers of improper waste removal. DuPont has therefore alleged that it had no duty to warn the federal government of these dangers.

The Court finds that at this stage, this showing is sufficient that DuPont met its duty to warn the federal government under Boyle.  Because DuPont is not required to win

17

its case before it can have it removed, the Court finds that DuPont has a colorable defense under Boyle.

Because the Court has found that DuPont has a colorable defense under Boyle, the Court need not turn to the issue of whether DuPont has a colorable defense under Yearsley as well.[5] One colorable defense is sufficient to satisfy this prong.

The Court finds that DuPont has met the four requirements for proper removal under 28 U.S.C. § 1442(a) and that Plaintiffs' facial attack on DuPont's assertion of subject matter jurisdiction fails.

## CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' motion to remand this action to the Superior Court of New Jersey.

An appropriate Order will be entered.

Date: May 22, 2020       __s/ Noel L. Hillman_____  
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

[5] The Court notes that in a parallel case, a judge in this District has found that DuPont has a colorable defense under Yearsley. See New Jersey Department of Environmental Protection, et al. v. E.I. Du Pont De Nemours & Company, et al., No. 19-14676 MAS-ZNQ, 2020 WL 2041382, at *4-5 (D.N.J. Apr. 28, 2020) (holding that DuPont is not precluded from arguing a colorable defense under Yearsley and that Dupont raised a colorable defense under Yearsley).